Tilghman C. J.
This is an action brought by Jared Irwin, late sheriff of Northumberland county, against the commissioners of the same county, for the recovery of fees to the amount of 1300 dollars, for summoning grand and. petty jurors in criminal cases, and general juries in civil cases, during the three years in which the said Irwin held the office of sheriff, viz. from October, 1806, to October, 1809. The fees charged in this account are not to be found in the fee-bill of 20th April, 1795; but it is contended, that it has been the custom of the courts of this state, to allow a reasonable compensation for the performance of services not mentioned in the fee-bill, and on that ground the plaintiff is entitled to recover. It is true, that the services for which these fees are charged, are not expressly mentioned; but I am not satisfied that, so far at least as concerns criminal cases, they are not included in the general expressions by which the sheriff is ■allowed “ in every criminal cause 1 dollar 33 cents, and in M capital causes 3 dollars 33 cents.” If this be the construc- ’ *506 tion of the fee-bill, the plaintiff must fail in his action, because the fees which he now claims are different from those *ast mentioned. But I will consider the matter on more general grounds. The plaintiff says, that the custom of the ^ ° J courts, to allow tees for services not specified m the act, proves the law to be, that the officers are entitled to a reasonable compensation in all such cases, because, if they were not, the courts had no right to make the allowance. Hence it is inferred, that the right of the officers is independent of the courts, the law raising an implied promise of payment for every service performed. But to this I cannot agree. It is not denied that the courts have been in the habit of allowing fees in cases omitted in the law, and, had it been the practice to allow those which are now in dispute, I should not have objected to it, although I cannot perceive the authority under which this practice was first introduced. The custom, however, has been of long standing, and has been indirectly recognised by acts of assembly. Therefore I would not disturb it, especially as by a late act (28th March, 1814,) no difficulty of this kind can arise in future, it being expressly provided, that no court shall, in any case, allow any fee not specified in that or some other act. Taking the plaintiff’s case as it stands upon the practice, the law is against him, because it has not been the practice to allow the fees he charges. Nor can it be supported on the general principles of the common law. For, although in the usual transactions of life, when one man performs sex-vices for another at his request, the law implies a promise to pay as much money as they are reasonably worth, yet there is a very imperfect analogy between those services and such as are performed by public officers. As to the latter, in most cases the compensation is fixed by positive law, nor is it in the power of the party to employ any other than the officer to whom the law has committed the performance of the service. If the fixed compensation is more than the service is worth, the party must pay it; if less, the officer must be content with it. Neither can resort to any other rule than the written law. It falls to the lot of almost every man to require the services of public officers. It is of very great importance therefore, that every man should know what he has to pay; for if it is left to the parties to agi-ee upon the compensation, a door is opened for perpetual litigation, and there is great danger of op *507 pression to the lower and more ignorant people. It is for •this reason that a table of fees has been established, which every officer is enjoined to exhibit to public view in his office. It is impossible for human wisdom to foresee every service which will arise. This must have been known to the legislature, and therefore, in framing the table, they have taken care to allow, what on the whole will render offices sufficiently lucrative, although for many services there may be no compensation at all. In the sheriff’s office the commission on executions is the principal source of profit. It may happen that many hundred dollars may be earned in a few hours. If all services were paid for on the same scale, the burden on suitors would be intolerable. But that not being the case, the officer may be supposed, on the whole, to receive a reasonable payment for each service, although for many he receives nothing. It appears to me, therefore, that the fee-bill was intended to enumerate all the services for which the officer should be entitled to receive pay ; and, if so, the law will imply no promise, to pay for any other services-. But there are other and special reasons against the plaintiff’s demand : In civil actions the county has no particular concern, and therefore the costs should be paid by the parties litigant. Criminal actions were-formerly prosecuted in the name of the king, who paid no costs. Upon our revolution the commonwealth stood in the place of the king, and therefore was not liable to costs except where so directed by act of assembly. Supposing then, for argument sake, that the county is substituted for the commonwealth, the commissioners, who represent the county, would not be liable except in cases where the commonwealth would have been liable. It has been urged besidesj that the commissioners, from the nature of their constitution, are not liable to an action of this kind, nor indeed, to any kind of action. But it being unnecessary to decide on that point, I give no opinion on it. It appears to me, on the whole, that this is not a case on which a promise arises by implication of law, and consequently, as no express promise is pretended, the president of the Court of Common Pleas was right in his charge to the jury, that the plaintiff ought not to recover. I am, therefore, of opinion, that the judgment should be affirmed.
Yeates J.
I have no hesitation in asserting, that previous. *508 to the late act of 28th March, 1814, compensatory fees for services rendered by public officers, not enumerated in any fee-bill, were uniformly received under the sanction of this Court, and of all the courts of justice in Pennsylvania. That act introduced a new principle in all future cases, and the 26th section thereof expressly declares, that no compensatory fee shall thereafter be allowed. We well know, that previous to the law of 1752, and for above 40 years afterwards, the price of a capias was 65. Yd.; of a summons 5s. Yd., and the attorney’s fee on a judgment in the Courts of Common Pleas was 305., &c. Let any man take the fee-bill of 1752, and collate all the constituent parts of services, which in the tout ensemble form those different sums, and I pledge myself he will not come up to them, unless he calls to his aid other matters, not inserted in the law, under a supposed quantum, meruit. I go further, and say, that at least one law since the revolution of 1776, has recognised the propriety of receiving fees due by custom and practice. At this place I have not access to those laws, and therefore cannot be more particular. In my view of the case, the law of 1814, was made for the express purpose of abolishing the former practice, and rendering the taxation of costs in the different counties as uniform as possible.
The important question here is, in what manner have these defendants become responsible to the plaintiff for his fees in summoning and returning jurors, during his three years of sheriffalty? I wholly pass by the consideration of a very subordinate question, that the fees have not been regularly taxed before this suit was brought. Between the sheriff and commissioners of Northumberland county, there was no privity whatever, whereon to ground a contract. Each of them in their official character moved in their appropriate sphere of action. It is not pretended, that the services rendered by the plaintiff, were performed at the instance and request of the defendants. Nor is there any ground to suppose, that the defendants were under either a legal or moral obligation to remunerate the sheriff for the services for which he seeks compensation in this suit. The act of 1752, subjects a county to the payment of fees in one instance only; — to the attorney general on a bill of indictment being returned ignoramus. Every other claim of a public officer on a county, rested merely on courtesy, and the practice of particular coun *509 ties. I have had some experience on this subject, and therefore I shall state, what in my idea led originally to a recurrence to the county in any case. The prerogative of the crown shielded the prosecutor from the payment of costs on an indictment, and this principle continued as to the commonwealth after the American revolution, until the 7th December , 1804, when a law passed (4 Smith’s Laws, 204,) “ to “ regulate the payment of costs on indictments,” whereby grand and petit jurors were empowered to decide, whether the county, prosecutor, or defendant should pay the costs. But antecedently thereto, the defendant, whether convicted or acquitted of the offence charged, was obliged to pay the costs and left to his remedy against the prosecutor by action of malicious prosecution. If he was convicted, the payment of costs formed part of the sentence ; if acquitted, he was discharged on payment of fees. When he was permitted to leave the walls of the prison, the officers and witnesses looked to the sheriff for reimbursement of their respective fees. But while he was in actual confinement, he received a certain weekly allowance from the county for his support. Where a person remained in prison for non-payment of costs, to an inconsiderable amount, it was discovered to be more economical to advance these costs, than to subsist the prisoners at the expense of the county for a length of time : hence the commissioners in some instances, directed the gaoler to discharge such prisoners, and drew orders on the county treasurers for the costs. In some counties this practice was more general than in others : the county of York in particular adopted it extensively. I speak from experience. What I have mentioned relates merely to costs in criminal prosecutions, wherein the commissioners interfered to save the county greater expense, according to their own discretion. The act of December, 1804, first made the county responsible for-costs on indictments, according to the decisions of the grand and petit jurors: it was reserved for the plaintiff in this suit, to transmute by some kind of legal alchymy, the sheriff’s remedy against individual suitors for his fees, into demands on the county. .The experiment appears to me perfectly novel. In Lyon v. M'Manus, (4 Binn. 167,) the responsibility of the parties in civil causes for the prothonotary’s fees, became the object of particular consideration in this Court. The act of 1752, allowed a fee of 2s. to the sheriff for summoning *510 'and returning a jury. The act of 20th April, 1795, (3 Snu Laws, 254,) established an explicit fee-bill, and ascertained the sheriff’s fees for summoning and returning a traverse jury, in each cause that is tried 40 cents, and for a struck and special jury, to be paid by the party putting off or losing the cause 2 dollars. But it remains to be shown, by what law or practice the county became liable for costs in actions of a civil nature. The acceptance of the office of sheriff was voluntary on the part of the plaintiff. The summoning and returning of juries, has time out of mind formed an important part of the sheriff’s duty. A slight alteration was introduced by section 2d of the act of 4th April, 1807, as to the drawing the names of the jurors out of the proper wheel, since the plaintiff was commissioned in October, 1806. But if much more heavy duties had been imposed upon him by subsequent laws, during-his sheriffalty, for which no compensation had been provided by the legislature, he must either have resigned his office or rested contented with his lot. He took the office with all its burdens, and cannot resort to the county commissioners for the payment of fees, due from other persons, and which possibly he may have received at least in part from those persons. . I.am decidedly of opinion, that the plaintiff has no claim, legal or equitable, against the defendants, and that the judgment of the Court of Common Pleas be affirmed.
Brackenridge J. agreed with the other judges, but the opinion which he delivered has been lost.
Judgment affirmed.