The opinion of the Court was delivered by
Duncan J.
Francis Johnson, in his life-time, appealed from the settlement of his accounts, as sheriff, with the Commonwealth, by the auditor general and treasurer of the state, made on the 4th April, 1814, reporting a sum due to the the Commonwealth of 219 dollars 90 cents. On his death, his executrix was substituted.
It is not alleged, that there is any error in the settlement, so far as respects the amount of public monies in the hands of sheriff Johnson; but he retained this sum for fees ; 201 dollars for the service of original process, issued out of the Court of Common Pleas on forfeited recognisances, and 18 dollars 90 cents on fieri faciases on forfeited recognisances. These sums are now claimed by way of set-off. Strictly there can be no set-off against the Commonwealth. A set-off is in the nature of an action, and was introduced to prevent circuity of action. And as no action can be brought against the State, it necessarily follows, that there can be no set-off. The Commonwealth v. Matlack. Superadded to this, the accounting officers could not allow this claim, even had it been recognised by law, to be deducted, there being no appropriation. Their duty was of another kind, to settle and adjust the account as other claims are ; and it then became the duty of the auditor general to report the same to the legislature, if in session ; but if not in session, then during the first week of the ensuing session.
If the claim had been recognised by law, and there had been an appropriation to meet it, it would then have been the duty of the accounting officers to have settled and adjusted it, according to law and equity. Act of 30th March, 1811. In this case there would, if it had been allowed, be no balance in the hands of the sheriff, and the account would *198 have been so settled. If the account had not been allowed, then the party, if dissatisfied with the decision, could have entered' his appeal. The doctrine of set-off has no relation to these settlements or appeals. The party has his remedy, but it is not by the medium of set-off.
A variety of claims on the public, by public officers, for fees, have, of late years, sprung up in different parts of the State. They have been in the form of actions against the commissioners of the county. They were made on the ground of compensatory fees, or on the pretence of usage and custom. These pretences are all swept away by the fee bill of 21st March, 1814, which forbids the Court to allow any officer, under any pretence' whatever, any fees under the denomination of compensatory fees. There are many onerous duties enjoined on public officers, particularly sheriffs, for which there may be no specific fee allowed by law. But these officers can have no just cause of complaint. For offices'here are not forced on any man. No man is obliged to accept them under penalty, as is the case with sheriffs in England; and even there, where the office is forced on the officer, the law is, that the sheriff’s being allowed no fees by the common law, his title to them must be by act of parliament. The sheriff and the courts are bound by the act, and there can be no extra allowance, not even for an auctioneer.
If it had been an usage for the State to pay these fees, another question would have been presented to the Court; but the testimony is, that the demand is now first made. This is not a circumstance of small weight. It affords the strongest evidence of the general understanding and universal opinion, that the State was not liable. We may be well assured, that these officers would not so long have remained dormant ; and if this demand is now to be sanctioned, a flood of claims, from every county in the State, by attornies, sheriffs, and prothonotaries, would rush in on the public treasury. This, however, would be no consideration, nor afford a just reason for rejecting the claim, if recognised by law. Before the revolution, the recognisance was to the king. The action on it, when forfeited, was in his name. There was no appropriation by any law of the province to pay the demand; ' nor would the proprietaries pay them out of their own estates, nor had'the king any exchequer here from which they could be drawn. It is evident, that a demand of fees for such ser» *199 vice, from the first recognisance we take, until the claim is decided, never was made on the government, or if made, was always rejected. At common law, and before the statute of Gloucester, no person was entitled to any costs of suit, in any action, real, personal, or mixed. If the plaintiff failed, J 7 1 7 t i jjv he was amerced pro falso clamores ir he succeeded, the defendant was in misericordia. It is a certain principle, that the king neither pays nor receives costs in any case. 3 Bl. 400. And it became necessary to provide for the case of the king receiving them on a specialty, by a subsequent statute. For by stat. 33 Hen. 8. c. 39. sect. 54, it is enacted, that the king in all suits upon specialties to himself, or to any other for his use, shall recover his just debts, costs and damages. Hull. 21. Criminal actions, before the revolution, were prosecuted in the name of the king, who paid no costs. The Commonwealth stands in the place of the king, and therefore is not liable to costs, except where so directed by act of assembly. Irwin v. The Commissioners of Northumberland county, 1 Serg. & Rawle, 505.
An attempt was made by the executors of a late prothonotary of Cumberland county, to recover a large sum from the county for his fees on forfeited recognisances, and it was decided by this Court at Chambersburg, in October, 1818, that he' was not entitled, as no law had thrown this burden on the county. Lyon’s executors v. The Commissioners of Cumberland county. 4 Serg. & Rawle, 443. Yet it would seem, that where fees in conducting public prosecutions, were by law to be paid by the public; the county in which the offence was committed was made liable, and not ihe State. As in outlawries on indictments for capital crimes; unfounded charges before justices of the peace; bills re-. turned ignoramus by the grand jury. Act of 23d September, 1791. 3 Sm. Laws, 42. So by act of 17th December, 1804. 4 Sm. Laws, 204, to regulate costs on indictments, the grand and petit jury were empowered to decide, whether the county, defendant, or prosecutor, should pay the costs. I know but of one case in which the expenses and consequences of a public prosecution, are cast on the State; and that is in the case of the conviction and execution of a slave : there the Court make an order on the State treasury, payable to the owner, for his value, and for the costs of prosecution j but in case of remission, or mitigation, for costs only; *200 Act of 1st March, 1780. 1 Sm. Laws 492. Before the act of 17th December, 1804, the defendant, when convicted or acquitted of the charge, was obliged to pay the costs: if acquitted, he was left to his remedy by action for malicious prosecution: if convicted, payment of costs formed part of the sentence. If acquitted, he was discharged, but still on payment of fees. Judge Yeates, in Irwin v. The Commissioners of Northumberland county, states a practice of some counties to discharge a prisoner confined for payment of costs, and draw for thejamount on the county treasury; and this from a principle of economy. It was better so to do, than increase the expenses by continuing the confinement, as the county was bound to support the prisoner, and that without any hopes of his being able to pay the costs. On the experience of Judge Yeates, we may rely with all confidence.
The only fee to be paid by the State on forfeited recognisances, to sheriffs, is by the act of 9th December, 1783, 2 Sm. Laws, 84; and that is, a commission of 2f per cent., for the trouble in collecting and paying into the treasury, all monies they may recover on forfeited recognisances.
The Court are of opinion, that this claim was properly rejected by the auditor general and state treasurer, because it was not a claim recognised by any law; nor the State liable for the fees on these actions on forfeited recognisances.
Judgment reversed, and judgment for the Commonwealth for the sum declared for, and interest from the time of settlement of Francis Johnson's account.