## Bashore *against* Whisler.

Respecting judicial sales of real estate, the rule is *caveat emptor.* A defect of title cannot be set up as a defence in an action upon a bond given to an administrator for the purchase money of a tract of land sold by an order of the orphan's court.

ERROR to *Cumberland* county.

This was an action of debt on a bond by John Snevely, administrator of Christian Whisler, against John Bashore, in which the following facts were found.

Previously to 1823, John Whisler was the owner of a tract of land in East Pennsborough township, containing sixty-nine acres and twenty-five perches. A parol agreement was made between John Whisler and his son Christian Whisler respecting the land, by which the father was to convey to the son the whole tract of land, and the son was to reconvey to the father two acres of the land, with an oil mill, &c. thereon erected. John, the father, on the 11th June 1823, for the consideration of 5532 dollars 50 cents, did convey the whole tract to Christian, the son, and Christian was about to execute a deed which had been prepared for the purpose, for the oil-mill, &c. and two acres to John, but owing to some accidental circumstances it was not done. The father and the son, in the course of these arrangements and contracts, estimated the value of the oil-mill, &c. and the two acres at 1200 dollars, and this sum Christian retained out of the 5532 dollars 50 cents, the purchase money mentioned in the deed of John to Christian of the whole tract. John, the father, went into possession of the oil-mill and two acres, and fenced and cultivated it until Christian died on the 1st of January 1827, intestate and without issue. On the 8th of March 1828, John Whisler as plaintiff, and John Snevely, administrator of Christian Whisler deceased, as defendant, entered into an amicable action "to decide all matters in variance between them," and referred it to arbitrators, who found the facts as they are hereinbefore stated, and came to this conclusion and made this award : "that the plaintiff, agreeably to contract, is entitled to the possession of the within mentioned oil-mill and its appurtenances ; and also two acres of land until he is paid for the same. And now we do award as soon as the plaintiff gives up the possession of the same to the defendant, he shall receive the sum of 1200 dollars." This award was filed in the prothonotary's office on the 2d of April 1828, and judgment entered thereon, which, on the 12th of April 1828, John Whisler assigned to Jacob Moltz.

To April term 1824, No. 135. The Agricultural Bank sued John Whisler; the cause was referred to arbitrators, who reported for the plaintiff 935 dollars, upon which judgment *nisi* was entered the 24th of December 1825, and from which the defendant appealed. The cause was afterwards tried in the circuit court, and a verdict and judgment rendered for the plaintiff on the 16th of April 1828 for 938 dollars 50 cents, upon which a *fieri facias* was issued and levied on the estate of John Whisler in said tract of land, "containing seventy acres more or less, with a house, barn, fulling-mill, oil-mill, &c. thereon erected." A *venditioni exponas* was issued, and on the 10th of October 1828, the same was sold to F. Watts, Esq. for 200 dollars, who received the sheriff's deed therefor, dated the 18th of October 1828. Acknowledged in open court the 11th of November 1828. On the 24th of March 1829, F. Watts, Esq. transferred his title to Samuel Alexander, Esq.

The personal estate of Christian Whisler deceased was inadequate to the payment of his debts; and on the 13th of August 1828, John Snevely, his administrator, petitioned the orphan's court for an order to sell the real estate of said deceased, and which is in said petition so described as to embrace the whole sixty-nine acres twenty-five perches, as originally conveyed by John Whisler to his son Christian. An order of sale was granted, and on the 14th of October 1828 the land was offered for sale, when a notice was given by F. Watts, Esq. in writing, that he claimed the land as having been sold to him as the property of John Whisler, and particularly that he claimed the oil-mill and two acres. Previously to the day of sale, John Snevely and John Bashore had a conversation on the subject of the conditions of sale, and John Snevely then told Bashore that one of the conditions should be, that the bidder to whom the land should be struck down should give his bond for 500 dollars immediately as an earnest, and which should be forfeited for non compliance with his bid. The conditions of the sale were written, and that was one of them, and they were fastened upon the porch of the house on the land, and attached to them was the written notice of F. Watts, Esq. before referred to. The land was struck down to John Bashore for 7600 dollars, one-half payable in hand, and the residue in three equal annual payments, without interest. John Bashore gave his bond to John Snevely for 500 dollars, in compliance with that condition of the sale before mentioned. A few days after the sale, and before the confirmation, John Bashore told John Snevely that if he had known of the claim made by F. Watts, Esq. on the day of sale, and before he purchased, he would not have bid. Snevely replied that he thought there would be no danger; that the purchase money payable by him, Bashore, would be applied to discharge that claim. At the following orphan's court the sale was confirmed, and the bonds for the future payments given. On the 8th of September 1832, an amicable action was entered into between Samuel Alexander, Esq. as plaintiff, and John Bashore, together with Jacob Moltz and John

Snevely, administrator of Christian Whisler deceased, as defendants, upon which all the facts before stated which had previously occurred were agreed to, and were considered in the nature of a special verdict, and in which the several parties thus presented their alleged rights. "Samuel Alexander, Esq. claims to have the said oil-mill and two acres of land, with the appurtenances; or in lieu thereof the said sum of 1200 dollars, and interest thereon from the 9th of December 1828, agreeably to said award. Jacob Moltz claims to have said 1200 dollars and interest agreeably to said award and assignment to him. John Bashore claims to hold said oil-mill and two acres of land, in fee clear of all incumbrances; and that said 1200 dollars shall be paid by John Snevely, administrator of Christian Whisler deceased, to the person who is lawfully entitled to receive the same. John Snevely, as administrator of Christian Whisler, becomes a party in order that the whole matter may be ended. And it is agreed by all parties that the court shall render such judgment as shall be lawful and right, either party having the right to sue out a writ of error, &c." Upon which the court of common pleas rendered this judgment.

"8th of September 1832. Judgment for the plaintiff for the oil-mill and lot of ground, as above described, to be released upon the payment of 1200 dollars, with interest from the 9th of December 1828. John Whisler could not assign away his interest after the lien of the judgment had attached; wherefore Moltz can take nothing by the assignment. Bashore has no remedy, for in the sale to him there was no guarantee of title. There is no remedy against the administrator of Christian Whisler for the same reason."

This judgment was removed to the supreme court by writ of error at the instance of the defendant, and the judgment was affirmed at October term 1832, and carried into effect by execution. The money already paid by Bashore to Snevely, the administrator of Christian Whisler, to wit the hand money and the two first payments, have been sufficient to pay all the debts of Christian Whisler deceased; and if the money for which this suit is brought be recovered, it will be distributed among the heirs at law of the said deceased. Upon these facts, if the court should be of opinion that the plaintiff be entitled to recover, then judgment to be entered for the sum of 1266 dollars 66 cents, with interest from the 1st of April 1832. If he be not entitled to recover, then judgment to be entered for the defendant.

The court below rendered a judgment for the plaintiff.

*Carothers,* for plaintiff in error.
*Watts,* for defendant in error.

The opinion of the Court was delivered by

ROGERS, J.—It cannot now be questioned that a defendant may allege defect of title, in the whole or in part, as a defence in a suit brought by a vendor against a vendee to recover unpaid purchase

money. This principle, which was first ruled in Steinhour *v.* Wilmer, 1 *Serg. & Rawle* 438, has been since affirmed in Hart *v.* Porter, 5 *Serg. & Rawle* 200, and in other cases to which it is unnecessary particularly to refer. Although this principle, as applied to private contracts, is undoubted, yet it has never been understood, either by the profession or the public, to be applicable to judicial sales. In Friedly *v.* Secily, 9 *Serg. & Rawle* 156, it was ruled, that a sheriff's sale cannot be objected to by the purchaser, merely on the ground of defect of title ; but that in all such cases it is binding, except where there be fraud or misdescription of the property in some material respect. It was also ruled in the same case, that a purchaser cannot object to a sheriff's sale because of a defect of title of which he had notice. That, therefore, when he has bought, after being publicly notified at the sale of such defect, he cannot give evidence of want of title, in a suit brought against him for the purchase money. The doctrine of Steinhour *v.* Wilmer does not extend to judicial sales ; nor has it been contended by any one that the usage asserted and maintained by Justice Yeates extended to them. At a judicial sale, the interest of the debtor, and no more, is sold. The purchaser acquires the title such as he held it. There is no warranty of title ; and if the vendee of the sheriff purchases without a sufficient examination, it is his fault, and is a matter with which the debtor has no concern. He agrees to run the risk of the title. The rule is *caveat emptor.*

What, then, was the interest which Christian Whisler's heirs had in these premises at the time of the sale by the administrator ? for whatever that interest was, and no more, was acquired by the purchaser ; and as to this question, since the decision of the court of common pleas, which was affirmed in error, there is neither doubt nor difficulty. I refer to the decision of the court in the amicable actions of the 8th of September 1832, between Samuel Alexander, who was the assignee of the purchaser at the sheriff's sale, and John Bashore, together with Jacob Moltz and John Snevely, administrator of Christian Whisler. The judgment was rendered for the plaintiff for the oil-mill and lot of ground, &c., to be released on the payment of 1200 dollars, with interest from the 9th of December 1828. This is, in substance, an affirmation of the decision of the arbitrators, in the amicable action of the 8th of March 1828, between John Whisler and John Snevely, the administrator. By this decision the legal estate is adjudged to be in the heirs of Christian Whisler, but the equitable interest in the assignee of the purchaser at the sheriff's sale. John Bashore, having succeeded by his purchase at the orphan's court sale to all the interest of Christian Whisler in the premises, has a right to require a release of all Mr Alexander's claim, on the payment of the 1200 dollars, with interest, as adjudged by the court. I do not understand that the plaintiff denies the general principle, as applicable to a sale by a sheriff, but he argues that there is a difference between a sale by an administrator and a sheriff's

[Bashore v. Whisler.]

sale; between creditors, and the defendant in an execution and the heirs of an intestate. The law recognizes no such distinction. The reasons on which the court proceeded in a sheriff's sale are fully stated in Friedly v. Secily, and are as applicable to the defendant in the execution as to the creditors. It would be manifestly unjust, as is there said, to release the purchaser from his bid on account of a defective title, the very cloud which obscured its value, and not to relieve the defendant in the execution, when he was able to dissipate that cloud which sacrificed his property. The duties of both are plain. The purchaser must examine the title before he buys, and it is the interest of the defendant, as far as he can, to clear up any objections which may be made as to its validity. If the purchaser will not inquire, he must suffer for his confidence; and if the defendant in the execution will be silent and not show his title, he must suffer for his obstinacy. When the sale is a fair one, it binds both the defendant and the purchaser. But it is said that a sale by the administrator is not a judicial sale. But we conceive that a sale by an administrator, under an order of the orphan's court for payment of debt, is a judicial sale; and that the principles which govern the one are applicable to the other. As in the case of a sheriff's sale, the purchaser takes only the interest of the heirs; the administrator who makes the sale is but the officer of the court. The land is sold in pursuance of their order; it must be returned to them and receive their confirmation before the title is vested in the purchaser. The administrator makes no warranty of title, either for himself personally or the heirs; and it is understood that the one sells and the other buys the title as it is, and as it was vested in the intestate.

It is further said, that the purchaser was induced to purchase in consequence of the representations of the administrator. The administrator gave it as his opinion, that the 1200 dollars would be taken out of the purchase money; but this opinion was expressed after the sale and before confirmation. There is nothing like fraud in this; for no doubt this opinion was honestly entertained by Mr Snevely. It was the folly of the purchaser, who was fully aware that there were difficulties attending the title, to repose confidence in the judgment of a person as uninformed as himself.

It was the duty of the purchaser to inquire of those who were capable of giving him correct information; and if this had been done, and the facts had been duly presented to the orphan's court, they would have had full power to relieve him by setting aside the sale.

Judgment affirmed.