WHITMAN PHILLIPS AND ELIJAH SHEDDON v. THE MAYOR AND COMMON COUNCIL OF THE CITY OF HUDSON.

1. Where a conveyance of land is executed, the purchaser can have no remedy for a failure of title but such as may be provided for by covenants contained in the conveyance.
2. When there was a sale of a term of years to pay for an improvement in the City of Hudson, and a declaration of sale delivered in pursuance of a void ordinance—*held*, that the purchase money could be recovered back in an action of *assumpsit*—BEASLEY, C. J., dissenting.
3. If the law authorizing a sale of land to pay for an improvement of the streets of a city, requires the officers of the city to advertise a notice of the expiration of the time within which the owner may redeem, the neglect to do so will render the purchaser's title invalid, and entitle him to recover back the purchase money in an action of *assumpsit*.

In case. On demurrer.

The declaration contained five counts.

1st count, was for money paid for certain lands sold by defendants to plaintiffs on the 23d December, 1858, for an assessment by them alleged to have been lawfully imposed thereon, for the improvement of Palisade avenue. It alleged that a declaration of sale was made and executed by defendants and given to plaintiffs (a copy of which was annexed), by virtue whereof, after the expiration of two years from the day of said sale, the plaintiffs ought to have the right to the possession of said lands. Plaintiffs aver that they cannot have or maintain any action for the possession of said lands, because the ordinance was declared illegal and void by the Court of Errors and Appeals.

2d count, for money paid, same as first count, with an averment that plaintiffs cannot have or maintain any action for the possession of said lands, because the defendants neglected to advertise for the redemption of said lands from said sale within the time required by law.

3d count, for money had and received, is the same as first count, with like averment.

4th count, for money had and received, is the same as second count, with like averment.

5th count, was the common count in *assumpsit*.

To the first four counts the defendants filed a general demurrer, and to the last count pleaded the general issue.

The demurrer was argued before the CHIEF JUSTICE, and Justices ELMER and VAN DYKE.

For the demurrants, *John P. Vroom*.

For the plaintiffs, *A. S. Jackson*.

For the demurrants, it was contended—

1. The instrument called a declaration of sale, on which the plaintiff's declaration is founded, is a sale for 10,000 years of certain lands sold for assessments under a power conferred upon defendants by their charter. It is under their common seal, signed by the mayor and attested by the clerk of the city.

It is in form and execution as much a deed as if signed and sealed by an individual. It is a specialty, and as the action is founded thereon, the form of the action should have been debt or covenant. 1 *Chit. Pl., tit. Debt, Covenant.*

Action of *assumpsit* does not lie on a contract under seal. 1 *Chit. Pl., tit. Assumpsit.*

It is true the declaration alleges money paid on request, and money had and received by defendants for the use of plaintiffs.; but the deed on which the declaration is founded shows neither money paid on request nor for the use of another; and if it did, the action would have to be on the specialty; in debt for a sum certain, or in covenant alleging a breach and damages.

The averment that the action is founded on the declaration of sale annexed, is either true or not true.

If true, the action should have been covenant; if not true, the plaintiffs must amend their declaration.

In either case the demurrer is well taken.

2. The substance of the first four counts is, that the defendants sold the plaintiffs certain lands for the term of 10,000 years; that the plaintiffs, on payment of the purchase money, received a declaration of sale; that by reason of alleged irregularities in. the proceedings the ordinance was set aside and plaintiffs are unable to obtain possession of the premises.

They admit they purchased what they supposed at the time to be a good title to the land and received a deed for it. They do not allege fraud or mistake or misrepresentation on the part of defendants, nor any promise to repay the money on account of the defect of title.

They show no eviction, for it appears they never obtained possession; but they allege constructive eviction, as when the plaintiff cannot obtain possession of the land by reason of defective title. *Rawle on Cov.* 257.

Whether the deed conveyed title or not cannot be tried in this action.

3. It appearing affirmatively by the plaintiffs' declaration that this action is founded on a contract under seal, the action of *assumpsit* cannot be sustained.

An objection to the form of action is matter of substance and may be taken advantage of by general demurrer. *Flanagan* v. *Camden Insurance Co.*, 1 *Dutcher* 506.

4. If plaintiffs had made a deposit of money, with agreement to buy on approval of title and the title had proved defective, they could recover back the deposit in an action for money had and received.

In such case the contract would have been merely executory and a court of equity would not enforce its performance.

But when a deed of conveyance has been delivered, the contract is executed and the purchaser's only right to relief, either at law or in equity, rests, in the absence of fraud, upon the covenants for title which he has received. *Rawle on Cov.* 605–6, 704; *Earle* v. *Earle, Spenc.* 363.

What amounts to a final delivery and acceptance of a deed is a question of law. In this case the plaintiffs aver the

making and delivery of the deed in express words, and there is no room for implication.

A. S. Jackson, for plaintiffs.

It is a general principle that proceedings of municipal corporations, if not confined within their statutory limits, are not only liable to be set aside on *certiorari*, but are held void and insufficient to support a title professing to be founded on them. *Carron* v. *Martin*, 2 *Dutcher* 594.

1. Right of action.

*Right of assignee.* Choses in action not being assignable at law, the suit must proceed in the name of the assignor. 1 *Chitty's Pl.* 15; 1 *Saunders' Pl. & Ev.* 168; *Richardson* v. *Beaumont, Spencer* 578.

*Consideration* of assignment cannot be inquired into by a court of law. *Rogers* v. *Colt,* 1 *Zab.* 704.

*Assumpsit* will lie (money had and received) to recover consideration money paid for land sold. *Shepherd* v. *Little,* 14 *Johns.* 210.

Money paid on a judgment afterwards reversed may be recovered in *assumpsit* for money had and received. *Clark* v. *Pinney,* 6 *Cowen* 297.

Void taxes paid may be recovered in *assumpsit. Torrey* v. *Millbury,* 21 *Pick.* 64.

Money paid on declaration of sale may be recovered. *Gardner* v. *Troy,* 26 *Barb.* 423; *Martin* v. *McCormick,* 4 *Sel.* 331; *Allen* v. *Hammond,* 11 *Peters* 63.

As to payment of interest. *Rogers* v. *Colt,* 1 *Zab.* 18; *Boddam* v. *Riley,* 2 *Bro. C. C.* 2; *Blaney* v. *Hendricks,* 2 *W. Blk.* 761; *Dickinson* v. *Legare,* 1 *Dessaus.* 537.

2. Total absence of consideration.

The council undertook to sell a term in said lands, but failing to proceed according to their charter, they had nothing to sell and did not sell anything.

Under a contract of sale the thing sold must have an actual or potential existence. 2 *Kent Com., p.* 602, (8th ed.)

The ordinance of council having been declared invalid (5

*Dutcher* 475) no term in said lands was conveyed by the declaration of sale.

If a court has no jurisdiction of a matter, a sale by a sheriff under an order of that court is void.

*J. P. Vroom*, in reply.

Where purchaser has received no covenants, he can neither detain the purchase money nor recover it back if already paid. *Rawle on Cov.* 607, and cases cited; *Rawle on Cov.* 703, in notes; *Tourville* v. *Naish*, 3 *P. Wil.* 307.

If there has been fraud the purchaser may, in equity, avoid the deed and recover the money. *Rawle on Cov.* 615.

Money paid under a mistake or ignorance of the law of our own country, but with a knowledge of the facts or a means of such knowledge, cannot be recovered back. 2 *Greenl. Ev.* 114; *Chitty on Cont.* 490, 491; *Elliot* v. *Swarthout*, 10 *Peters R.* 147.

*Caveat emptor* is a recognised and fixed maxim, applicable equally to the transfer of lands and chattels. *Frost* v. *Raymond*, 2 *Caines* 188.

It applies equally whether the party is in or out of possession. *Br. Leg. Max.* 609.

ELMER, J. The plaintiffs seek to recover from the defendants the money paid upon the public sale of land in the City of Hudson, sold to make the sum assessed for the improvement of a street, purporting to have been made in pursuance of the 38th section of the act to incorporate the City of Hudson. *Acts of* 1855, *p.* 782. This section provides that the assessment shall be a lien on the land, and if not paid it shall be lawful for the common council to cause such land to be sold at public auction for the shortest term for which any person will agree to take the same and pay the assessment, with interest, and the costs and charges; and to execute, under the common seal of the city, a declaration of such sale and to deliver the same to the purchaser; and such purchaser shall, by virtue thereof, lawfully hold and enjoy the

said lands for his own use against the owner thereof and all persons claiming under him, until his said term shall be ended, provided the sale shall be advertised in the mode prescribed; and the recitals of such declaration of sale shall be evidence of the assessment, advertising, and sale; and provided also, that the land so sold may be redeemed by the owner, mortgagee, occupant, or other person interested, or by any one for them at any time within two years after the sale, by paying to the treasurer, for the use of the purchaser, the purchase money and interest, at the rate of fifteen per cent. per annum; and provided also, that said term shall not commence and the purchaser shall not have a right of possession to said land until the said term of two years shall have expired. The 39th section prescribes that it shall be the duty of the common council to give notice of the expiration of the time limited for the redemption of the land by advertisement, sixty days next preceding the expiration of the time so limited, specifying the property and the amount due.

The plaintiff agreed to take the land for the term of ten thousand years, paid the assessment, with interest and charges, and received a declaration of sale, as the act prescribes. Four counts of the declaration are demurred to. They set forth the declaration of sale at length. Two of the counts claim the return of the purchase money on the ground that the ordinance directing the improvement, and the assessment and proceedings under the same, were illegal and void, and have been so declared by the judgment of this court; and two claim it on the ground that the common council neglected to advertise for the redemption of said land for and within the time required by law.

As to the neglect to advertise, it is insisted by the counsel for the city that the thirty-ninth section of the charter, requiring this to be done within a specified time by the common council, is only directory, and that it may be done and was done afterwards. The case of *Stevenson* v. *Lawrence*, 2 *Am.*

*L. R.* (*May,* 1863,) 407, was relied on as sustaining this construction.

It was there held by the Court of Common Pleas of Philadelphia, perhaps correctly, although by a divided court, that the clause of the Pennsylvania act respecting contested elections, directing the court to hear and determine the case at the next term, did not prevent the court from proceeding to determine it after the expiration of that term. This was so held upon the principle established by the cases of *Rex* v. *Sparrow,* 2 *Strange* 1123, and *Rex* v. *Loxdale,* 1 *Burr.* 445; that where acts are directed by a statute to be done at a certain day by public officers or courts, which acts relate to rights of the public or suitors, the acts may be done afterwards, because the persons entitled to the benefit of those acts are not to lose that benefit because of the inability or neglect of the officers or the court. But if the act is to be done by the party to be benefited, this principle does not apply; he must take care to do it within the time prescribed. 2 *Wright* (*Penn.*) 270.

It was held by the Court of Errors in the case of *Carron* v. *Martin,* 2 *Dutcher* 595, in accordance with the uniform course of decision in tax and assessment cases, that the proceedings of corporations must be kept strictly within the limits assigned to them by the statutes under which they act, otherwise they are void and insufficient to support a title professing to be founded on them. And the same principle was adhered to in the case of *The State* v. *Hudson City,* 5 *Dutcher* 104, 475, where the ordinance and assessment under which the sale now in question purported to be made, were declared to be illegal and void. By the express terms of the law the purchaser was entitled to immediate possession of the land at the expiration of two years from the sale, his term commencing and running from that time; but if the notice of the expiration of this period was not given, as it is made the duty of the council to advertise it, the owner cannot be dispossessed and the purchaser's title fails by the default of the party making the sale.

The case of *Doughty* v. *Hope*, 3 *Denio* 595, is in point. It was there held that where a corporation sold land to pay an assessment for opening a street and was required to give notice of the time of redemption, the publication of the notice must be fully completed before the commencement of the last six months of the two years succeeding the sale, and an omission in this respect will invalidate the purchaser's title. The cases indeed are numerous which hold that where the statute requires either the officers of the law or the purchaser at a tax sale, within a limited time after the sale has taken place, to perform certain duties or acts intended for the protection of the former owner, these duties or acts must be strictly performed within the time prescribed or the sale is not valid. 7 *Conn. R.* 505; 5 *Vermont* 9; 15 *Ver.* 357; 19 *Ver.* 49; 25 *Ver.* 482; 32 *Maine* 394; 43 *Maine* 311; 48 *Maine* 317; 28 *Miss.* 70.

The right of the plaintiffs to recover, for the reason that the sale was made in pursuance of an illegal and void ordinance and assessment, is resisted upon the ground that they have no remedy for a failure or defect of the title to the land purchased but such as may be provided for by covenants in the declaration of sale, which, it is insisted, was intended to operate and must be treated as a conveyance or lease to the plaintiffs of the term in the premises assessed, for which they agreed to pay the money now demanded.

It is undoubtedly the well established rule of law that so long as a contract for the sale of land is executory only the purchaser is entitled to have a good title, unless the contrary is expressly or impliedly agreed; but when the bargain is consummated by the delivery and acceptance of a deed, the purchaser must look to the covenants he has taken care to have provided, and in the absence of fraud has no right to relief, either at law or in equity for defects of title, except as such covenants afford it. *Rawle Cov., tit.* 606; *Cro. Jac.* 196; 1 *Salk.* 211; 1 *Term R.* 762; 13 *Ves.* 121; *Doug.* 665; *Frost* v. *Raymond*, 2 *Caines* 188; *Commonw.* v. *Mc-Clanachan*, 4 *Rand.* (*Va.*) 482. In the case of a sale of a free-

hold estate, although originally the word give imported a covenant of warranty, and Lord Eldon, in *Browning* v. *Wright,* 2 *B. & P.* 21, said the words granted, bargained, sold, enfeoffed, and confirmed, certainly import a covenant in law; it seems now to be settled that in conveyances by deeds of bargain and sale they have no such effect; but on the creation of an estate less than freehold a covenant of title is implied from the words of leasing. *Rawle* 272, and cases.

No lease or conveyance is authorized by the law under which this sale was made, probably for the reason that no estate of any kind was intended to be created until the expiration of two years allowed for redemption, and for the reason also that it was not expected to bind the city to make good any defect in the title of the ostensible owner. The declaration of sale delivered to the purchaser, as set forth in the declaration, contains no words of grant, and is in fact a mere receipt for the purchase money, with a full statement of the assessment, advertising, and sale, made by the act evidence of the truth of the facts recited, so as to enable the purchasers, if the land was not redeemed and the notice of the time of redemption was duly given, to enter upon the possession of his term. The title depended not on the declaration itself but on the facts of the assessment, sale, and payment of the purchase money, and of the notice required by the thirty-ninth section.

This case, therefore, in my opinion does not come within the rule that a purchaser who takes a conveyance of real estate, must take care to protect himself against a failure of title by appropriate covenants or take the risk on himself, for the reason that no conveyance was made or intended to be made in which covenants could be inserted. The rule is technical and does not apply if a conveyance is not in fact perfected. In that event the purchaser can recover back his money if the title fails, even where he has taken possession of the property. *Cripps* v. *Read,* 6 *Term R.* 608; *Johnson* v. *Johnson,* 3 *Bos. & Pul.* 166; *Williams* v. *Read,* 5 *Pick.* 540.

In the case of a sale of real estate by the possessor a formal covenant is required, because, as was said by Lord Eldon in *Hiern* v. *Mill*, 13 *Ves.* 122, " no person in his senses would take an offer of a purchase from a man merely because he stood upon the ground. It is not even *prima facie* evidence. He may be tenant by sufferance or a trespasser. A purchaser must look to his title ; and if, being asked for the deeds, he acknowledge he has not got them, the purchaser is bound to further inquiry."

He is required to inform himself and rely on his own judgment or that of his legal adviser, or to protect himself by covenants if he wishes also to rely on the guarantee of the seller. In the case of a sale by a public officer, it is understood from the nature of the case, the seller only undertakes to convey such a title as the owner or possessor had, and is only bound to act in good faith by virtue of a valid authority, and can be required to covenant only against his own acts. The general rule of the common law in regard to sales of real estate and personal property is *caveat emptor ;* but in the case of sales of personal property by a person professing to be the owner, the title passing by delivery only, a warranty of title is implied. In the case of *Morley* v. *Attenborough*, 3 *Exch. R.* 513, Justice Parke threw some doubt on the doctrine of warranty in sale of goods and chattels, but the point actually decided was, that upon the sale of a pledge by a pawnbroker, from the nature of his occupation, he only undertook that the subject of the sale was a pledge and irredeemable, and that he was not cognizant of any defect of title to it. A sale of personal property by an officer only implies that he had authority to sell such a title as the ostensible owner had. 9 *Wheat.* 616,* 1 *Blackf.* 10 ; 3 *Watts* 490 ; 5 *Munf.* 287.

In the case of *Peto* v. *Blades*, 5 *Taunt.* 657, it was held that the law raises an implied promise *in* a sheriff selling goods taken in execution, that he does not know that he is destitute of title to the goods. In the case of *Putnam* v. *Westcott*, 19 *Johns.* 73, it was held that where a constable

---

* *The Monte Allegre.*

sold a leasehold estate and received the purchase money, it might be recovered back on the ground that he had no authority to sell such a property. A sheriff who should undertake to sell real estate by virtue of a void execution, certainly could not enforce such a sale and oblige the purchaser to take and pay for the property. Whether the money paid on such a purchase could be recovered back in the absence of fraud, if the purchaser should be incautious enough to take a deed without requiring covenants to meet such a defect, may be doubtful; but in such a case the sheriff's freedom from liability, if it exists, would rest altogether upon the technical rule that he was bound only to the extent of the covenants contained in his deed.

The statutes of Vermont and New Hampshire require the officer selling land for tax to make a deed to the purchaser with a covenant of warranty. It has, however, been held in both these states that the officer is not personally liable on such a covenant for a defect in the tax payer's title. *Gibson* v. *Mussey*, 11 *Vermont* 212; *Wilson* v. *Cochrane*, 14 *N. Hamp.* 397. *Blackwell on Tax Tit.* 444, commenting on these decisions, remarks: "Whether the collector might not be responsible for his own omissions, neglects, and other irregularities upon such a covenant, is undecided. No objections, however, can be perceived to a recovery of the consideration money in such a case." An action will lie against a corporation to recover back a tax illegally levied. *Sumner* v. *First Parish*, 4 *Pick.* 361; 5 *Pick.* 453, 503; 12 *Pick.* 7. In the case before us the law directs a declaration of sale without covenants of any kind on the part of the city. If the land is redeemed by the payment of the purchase money and fifteen per cent. interest to the treasurer, there can be no doubt that the purchaser may recover the money by action for money had and received. And in my opinion he has a like remedy if the proceedings of the city authorities in making the sale were illegal and void, or if the sale fails to become available by the neglect to give the required notice of the expiration of the time limited for the redemption of the land.

But if the declaration of sale is to be considered in all respects equivalent to a formal conveyance of the term sold, I think the case comes within the principle that where the subject matter of the contract did not exist at the time of the sale the contract is not binding. If a chattel is sold and at the time of the sale it does not exist, the contract is not binding on the purchaser; and if in ignorance of this fact he had paid the purchase money he can recover it back. *Barr* v. *Gibson*, 3 *M. & W.* 390; *Strickland* v. *Turner*, 14 *E. L. & E. R.* 471. And the same rule applies to real estate. *Stent* v. *Bailis*, 2 *P. Wms.* 217. In the case of *Hitchcock* v. *Giddings*, 4 *Price* 135, Chief Baron Richards ordered a bond, given for the purchase money of a remainder in fee expectant on an estate tail, to be given up and the interest paid on it to be refunded, on the ground that it turned out that the tenant in tail had suffered a recovery and thus destroyed the remainder before the execution of the conveyance, of which fact both parties were ignorant. The Supreme Court of New York held this principle applicable to a case like the present, I think rightly, although I do not concur in all the reasoning of the judges. *Martin* v. *McCormick*, 4 *Seld.* 331; *Gardiner* v. *Mayor of Troy*, 26 *Barb.* 423.

I am aware that the case of *Hitchcock* v. *Giddings* has been questioned, and may, perhaps, be a doubtful application of the principle upon which it was decided. I cannot doubt, however, that if there should be a regular sale and conveyance of real estate, which should turn out never to have existed or to have been totally destroyed before the contract of sale was consummated, so that there was nothing upon which the conveyance could operate, the contract and conveyance would be treated as having no validity and the consideration money might be recovered back. The case before us, in my opinion, falls fairly within the same principle. The defendants had nothing to sell and the purchaser acquired nothing. There never having been a valid ordinance for making the contemplated improvement, the declaration of sale was a nullity; the mayor had no authority to

affix to it the corporation seal; it cannot, therefore, be set up against the plaintiffs as in any way affecting their rights. The case stands as if no conveyance had been executed.

The argument relied on for the city was, that the purchasers had the means of knowing what the facts were and bought upon speculation a property which, had their right of possession actually accrued for the long term agreed on, would have been of great value. No doubt sales of this description, owing to the very common neglect of city officers to comply with the directions of the statutes under which they profess to act, are exceedingly uncertain and precarious. But it is against public policy to increase this evil by failing to hold them to a strict accountability. Purchasers have a right to presume that they have done and will continue to do their duty, and are not bound to require covenants to this effect, any more than upon a purchase of property from the owner to require covenants that the subject matter of the purchase does in fact exist.

In my opinion all the counts demurred to set forth a good cause of action. The demurrer must be overruled and judgment rendered for the plaintiffs.

VAN DYKE, J., concurred.

THE CHIEF JUSTICE. This case arises on a demurrer to the first four counts of the declaration.

The facts stated on the record by the plaintiffs and on which they rely to sustain their action on the first two counts demurred to, are in substance these: that they paid to the defendants a certain sum of money for a tract of land which the defendants caused to be sold at public auction under the authority given them in the charter of Hudson City, for an assessment made against said land for certain city improvements; that in further pursuance of said charter the defendants, in writing and under their corporate seal, had executed to them, the plaintiffs to whom the land had been struck off at said auction, a declaration of sale for said premises, but

that no title passed thereunder in consequence of the omission to do certain acts, which were necessary in law, in making said assessment and sale.

It will be perceived that fraud is not suggested, but the action is in *assumpsit* to recover back the consideration money thus paid, on the ground that the proceedings of the municipal authorities in conducting the assessment and sale were irregular and void, and that in consequence thereof no interest in the premises passed to the plaintiffs.

The demurrer of course admitting the truth of the statements of the declaration, the single point of inquiry is, whether, in cases of sales of lands at auction made by municipal corporations in pursuance of statutory authority, the purchaser can recover back by suit at law the money which he has paid on the delivery of the deed, on the discovery of an omission or mistake in the proceedings which vitiates the sale.

It is certain that the rule of *caveat emptor* has very generally been applied with great rigor to executed sales of real estate. At first view it would seem unreasonable that a person who, for a valuable consideration, conveys land to which he believes he has a valid title, to another who purchases in the same belief, should be permitted to retain the money, when, contrary to the expectation of both seller and buyer, the title proves worthless. But the law proceeds upon the consideration, and it is certainly of much weight, that as there is nothing immoral in the sale of a title, whether it be good or bad, it is best to leave it to the parties to make their own bargains and to provide in their contract for all contingencies. If it be the understanding of the parties that the vendor is to warrant the title, either generally or in a qualified form, it seems not unreasonable to require that a stipulation to that effect should be embodied in the deed. As the conveyance contains the agreement on which the lands are sold on the one side and purchased on the other, the law will not, in the absence of covenants of title in the instrument, permit an agreement to repay the purchase money to

be raised by implication, as this would be to superadd a term to the written contract of the parties. And this is but an application or subdivision of the general rule of law, that when the parties have made their contract in regard to any subject, such contract being valid, the law will not imply one. At all events, be the reasons what they may, it is established by the decided weight of authority that when a deed of conveyance has been delivered and the money paid, and the contract which has been made is thus executed, the purchaser's only right for relief, either at law or in equity from defects of title, depends, in a case unaffected by fraud, on the covenants contained in the deed. As far back as Lord Buckhurst's case, 1 *Rep.* 1, it was said that if one seized in fee convey without warranty, "the title papers pass to the grantee, because he is to defend the land at his peril." Lord Nottingham, in Sergeant Maynard's case, reported in the appendix to 3 *Swanston* 652, thus forcibly states the rule : " Yet he that purchases lands without any covenants or war- rantees against prior titles, as here, where the defendants sold only their own title, if the purchaser be afterwards evicted by an eigne title, he can never exhibit a bill in equity to have the purchase money again upon that account; possibly there may be equity to stop the payment of such purchase money as is behind, but never to recover what is paid ; for the chan- cery mends no man's bargain, though it sometimes mends his assurance ; and it cannot be truly said that the defend- ants keep the money for nothing, since they have done all which was agreed to be done for it; but if the plaintiff had bought that which falls out to be worth nothing, he can com- plain of none but himself."

Thus again in the case of *Bree* v. *Holbech, Douglas* 654, which was a suit at law to recover back the money paid on an assignment of a mortgage made by an administrator, which proved to be a forgery, Lord Mansfield, delivering the opin- ion of the Court of King's Bench, ruled against the plaintiff, on the ground that the administrator had not convenanted for the validity of the title, and he adds : " it was incumbent on

the plaintiff to look to the goodness of it." The principle of this case was subsequently approved by Lord Kenyon in *Cripps* v. *Reade*, 6 *T. R.* 607, in which he says: "I do not wish to disturb the rule of *caveat emptor*, adopted in *Bree* v. *Holbech*, and in other cases where a *regular conveyance was made, to which other covenants were not to be added.*"

But it is not necessary to review the cases or even to cite them in detail, as they will be found in the text books. Chancellor Kent thus states the result of his examination of the leading authorities: "I apprehend that in sales of land the technical rule remits the party back to his covenants in his deed; and if there be no ingredient of fraud in the case, and the party has not had the precaution to secure himself by covenants, he has no remedy for his money even on a failure of title." 2 *Kent's Com.* 473, 4*th ed.*

And to the same effect are the words of Sir Edward Sugden: "But if the conveyance has been actually executed by all the necessary parties and the purchaser is evicted by a title to which the covenants do not extend, he cannot recover the purchase money, either at law or in equity." 2 *Sugd. Vend. & Pur.* 681.

The following authorities will be found fully to sustain this conclusion: 4 *Cruise* 394, 4 *ed.*; 1 *Sugd. V. & P.* 422, § 40; *Rawle on Cov. of Tit.*, 458, c. 13; *Dunston* v. *Morris*, 2d *ed.* 43; *Barkhamstead* v. *Case*, 5 *Conn.* 530.

On the argument the existence of the general rule above stated was not disputed, but it was insisted that it had no application to the case now before the court.

It was in the first place suggested that the deed, executed by the defendants to the plaintiffs, was not a conveyance in the technical sense, and therefore the rule usually controlling sales of real estate did not apply. The force of this argument is not perceived. The rule alluded to does not consist in a form, but in a principle—and that principle is that when a deed is executed on the sale of lands, the law conclusively presumes that all the agreements touching the title are embodied in such deed. It is enough, therefore, to say that

the instrument, in this case styled a declaration of sale, is a deed delivered by the vendor and received by the vendees as the repository. It recites the assessment, the confirmation by ordinance, the advertisements, the public sale, the purchase by the plaintiffs, and the payment of the purchase money, and then declares the interest in the land to which the plaintiffs shall be entitled, and concludes with a proviso that the plaintiffs shall deliver up the premises in good condition at the expiration of the term. If it had been part of the agreement of sale that the defendants should pay back the purchase money in any event whatever, such stipulation, being of the substance of the bargain, would have found its appropriate place in this writing. I am unable to perceive anything in the mere form of the deed which can take the case out of the operation of the general rule.

But it was, in the second place, urged on the argumen that where the subject matter of the sale does not exist at the time of such sale, the contract is invalid *ab initio*, and the money paid under such void contract is recoverable.

This is the admitted rule of law in sales of chattels, but it seems to be clear that if it should be applied to sales of real estate, it will, of necessity, operate as an entire abrogation of the principle of *caveat emptor*.

Two cases were referred to by counsel in support of this extension of the principle prevailing in sales of chattels to sales of lands. They were both decisions of the courts of New York. The first of them was that of *Martin* v. *McCormick*, reported in 5 *Selden* 331. The facts were these: the owner of real estate which had been sold for taxes, regularly redeemed the same by payment to the comptroller, before the purchaser had obtained his deed. By this means the title was revested in him, but afterwards upon being told, though such was not the fact, that at the time of the payment of the money by him the deed had already passed to the purchaser at the tax sale, and under the misapprehension thus created he bought in the title and took a deed from such purchaser.

The suit was brought in a court of law against the purchaser to recover back the money thus paid.

It will be perceived that this was the case of a person being the owner of real estate becoming the purchaser, in ignorance of his rights, of his own property. Under such circumstances it has uniformly been held that the transaction is founded in a mistake, against which a court of equity will relieve. Sugden lays down the rule, in a general form, thus: "If a person having a right to an estate purchase it of another person, being ignorant of his own title, equity will compel the vendor to refund the purchase money with interest from the time of bringing the bill, although no fraud appear." 1 *Sudg. V. & P.* 421. The doctrine contained in this citation will be found to be fully sustained by the following cases: *Bingham* v. *Bingham,* 1 *Ves.* 126; *Lansdown* v. *Lansdown,* *Mos.* 364; *Saunders* v. *Annesley,* 2 *Scho..& Lef.* 101; *Stewart* v. *Stewart,* 6 *Cla. & Fin.* 911.

The propriety, if not necessity of this doctrine of equity, is evident from the consideration that the mistake is of a character from the effects of which a party could have no redress under the ordinary covenants in a conveyance.

There was a circumstance, therefore, in the case of *Martin* v. *McCormick,* which was peculiar to it and which subjected it to the operation of rules of equity which can have no application to the matter now in hand. It is certainly true that in the opinion of the judge delivered in the case just cited, the decision was not based on the admitted principle of equity above indicated, nor were any of the authorities on that subject referred to. The novel principle relied upon was, that in cases where there is mutual error as to the existence of the subject matter of the contract, a recession may be had. For this doctrine, *Story's Eq., Vol.* 1, § 141–2–3, was cited, and the only other authority to which reference was made was the case of *Hitchcock* v. *Giddings,* 4 *Price* 135, in which Baron Richards held that a bond given for the purchase money on the sale of a remainder in fee expectant upon an estate tail, should be given up to be cancelled, it appearing

that at the time of the contract, though both parties were ignorant of the fact, the remainder had been cut off by a recovery. It is certainly remarkable that this authority should have been quoted, apparently with implicit confidence in a judicial opinion in New York, where it had been more than twenty years before directly repudiated in that state by Chancellor Walworth, as opposed to the weight of adjudications both in England and in this country. This case in the Exchequer, it is believed, has never been followed; it was, at an early period, called in question by Lord Eldon, and it is more than once referred to by Sir Edward Sugden, seemingly on each occasion for the mere purpose of being marked with his disapprobation. *Bates* v. *Delavan*, 5 *Paige* 307; 1 *Sugd. V. & P.* 272.

But the case in New York, cited from Selden, I must think is not less remarkable on another ground, which is, that it introduces into a court of common law, the doctrine of equitable relief in cases of mistake in sales of real estate. It is scarcely necessary to say that no attempt is made to justify this solecism in law by the support of judicial determinations, or even by any course of reasoning on general principles. It might have been supposed that this point escaped the notice of the court if the report of the case did not state that one of the judges was in favor of dismissing " the complaint without prejudice to an action for specific relief by avoiding the contract for the purchase of the lease." The result, we are told however, was that in a suit at common law for money had and received, the judgment below " was reversed and *the sale declared rescinded.*" It seems clear that this case cannot be relied on in any particular as a precedent to be followed by the courts of this state.

The other case to which, on the argument, our attention was directed, was that of *Gardner* v. *Mayor, &c., of Troy*, 26 *Barb.* 423. This case is more in point. The circumstances were that the mayor, &c., of Troy had caused to be sold, under a municipal assessment, the premises in question, and at such sale bid them in in the name of a third party. Sub-

sequently the corporation had sold them to the plaintiff, the deed being executed by the nominal purchaser. It was afterwards ascertained that, owing to a defect in the proceedings leading to the sale, the sale was void. The suit was an action at law for the purchase money. The referee, in the court below, had decided that there could be no recovery, on the ground that there were no covenants of title in the deed.

This decision the Supreme Court reversed.

It appeared in the case that the defect in the proceedings which rendered the sale invalid, was the "vagueness and uncertainty in the description of the premises in the assessment;" and it further appeared that this defect was patent on the declaration of sale given to the plaintiff. There could be no pretence, therefore, that the plaintiff was ignorant of any facts connected with the proceedings on the sale. The mistake made was in the assumption that the description of the premises in the assessment was sufficient. This most certainly was a mistake, not as to the fact, but as to the law.

I think it would be difficult to find any case but this one in which a party has been relieved, either at law or equity, on the ground of his mistake as to the legal effect of the facts of a given case. But the court said they could not distinguish this case, in this particular, from that of the case above criticised of *Hitchcock* v. *Giddings*, although this latter case clearly shows, and it affirmatively appeared by proof, that the party who was relieved had acted in ignorence of the fact that a recovery had been actually suffered at the time of his purchase.

But passing by this point without further comment, it seems to me the case cannot, by any course of reasoning, be taken fairly out of the scope of the general principle before adverted to, and which is the governing one in all sales of lands. The city, in this case, had purchased the premises at their own sale, and, supposing the title thus acquired to be valid, had sold and conveyed the property to the plaintiff. In what respect does such sale differ from that of the usual

transfer of real estate on a valuable consideration, by a party who has no title, but who, in good faith, supposes he has? The judge who delivered the opinion in the case just cited endeavors to discriminate. He says: "I do not regard this as a case of the failure of title. It is rather the failure of the subject matter of the sale." What was the subject matter of this sale? The land could not have been referred to, because there certainly was no failure in that respect. It must then have been the *estate* in the land which was the subject matter of the sale which failed. But it is precisely this, as it seems to me, which always fails when the vendor conveys land to which he has no title. The vendee always supposes he is acquiring an interest or estate, either entire or limited, in the property, and it is this estate or interest, being the subject matter of the sale, which fails when the title is defective. This is the only reason which is suggested why the case then before the court did not fall within the general rule, and it appears to me to be entirely unsatisfactory. To adopt it would be, in my opinion, to overlook entirely the principle on which that rule is founded. That principle is, that the law conclusively presumes that the deed executed at the time of the sale of the land, contains the whole agreement between the parties respecting the sale. On principles of public policy and with the view of the establishment of a general practical rule, nothing is permitted to be added to such instrument. Now it is obvious that in the case in New York, the court allowed in substance though not in form, the interpolation into the deed executed by the nominal party in behalf of the corporation, of a covenant of warranty to the extent that the acts of the city officials had been regular and legal. This departure from the general principle appears to be quite arbitrary, as no equitable circumstances peculiar to the case are perceived. It clearly was in the power of the purchaser at the municipal sale to stipulate for this very warranty which the court raised by implication in his favor. He stood on the same footing, in this regard, with a purchaser at private sale, and, as he

possessed the right to ask for such covenant, it would seem that the corporation were entitled to exercise the correlative right to make or refuse to make such covenant.

I fear, too, that this relaxation of the general principle which is now claimed will tend to introduce uncertainty in a branch of the law in which it is important that everything should be steadfast. Who can say how far the precedent is to lead? Upon general reasoning, it must go much beyond public sales by municipal bodies. In this case we have presented to us the defective execution of a statutory power. If, on account of such defective execution, the purchase money can be recovered back, why not the same result follow in all cases of defective execution of powers created by deed or will authorizing the sale or conveyance of real estate? If the donee of the private power fails so to execute it as to pass the estate, why should he not be called upon to refund the purchase money on precisely the same ground that the action on these first two counts can be sustained? On the plaintiffs' theory equity need no longer be appealed to for aid in cases of the defective execution of powers, for much of that abstruse subject would be thrown into the courts of common law in the form of an ordinary suit in *assumpsit* to enforce the payment of the purchase money. So likewise the principle would seem to be applicable to sales by sheriffs, administrators, and all persons acting by statutory authority. Is it to be pushed to this extent? It seems to me to be needless and therefore unwise to breed doubts in these matters. It is the tendency of all exceptions to general rules to render the law intricate and to some extent unsettled; and consequently they should not be admitted, except when the benefit hoped for will much more than countervail the inconvenience which is certain.

From these considerations I cannot but conclude that upon well established general principles, the vendee of lands sold by municipal corporations under statutory authority, can claim to hold no better position than can a vendee at a private sale. In such cases, if the deed contain no covenant

to that end, a stipulation cannot be raised by implication against the corporation that the proceedings, up to the time of sale, have been regular and legal. The formality and propriety of such proceedings are open, in the same manner as the vendor's chain of title is in ordinary cases, to the examination of all persons who have it in contemplation to purchase, and the buyer must make such examination and must decide at his own risk the question of their sufficiency, or he must demand a warranty as a part of the consideration of the purchase. Thus far the case seems to me to fall within the rule of *caveat emptor.*

But there is another element in the case. In the last two counts demurred to, it is alleged that the corporation failed to advertise for the redemption of the lands within the time required by law. This step is prescribed by the charter of the city. It is an act to be done after the delivery of the deed, and is a condition precedent to the vesting of any estate in the plaintiff. The title could no more pass to the plaintiff without the performance of this act by the corporation, than it could have passed without a delivery of the deed. The making of the deed, therefore, was only a part of the ceremony requisite to vest the title in plaintiff—the advertisement was the completion of that ceremony.

It seems to me, then, that until this advertisement was duly made the matter remained in *fieri.* The rule of *caveat emptor* does not apply until the transaction is complete. This has been settled by many cases.

I think, therefore, as from the neglect of the corporation to make the advertisement required by the charter, there has been occasioned an entire failure of consideration—the money paid can be recovered back under the last two counts in the present form of action.

I think the demurrer cannot be sustained.

CITED in *Gano* v. *Vanderveer,* 5 *Vroom* 294; *State, Evans, pros.,* v. *Jersey City,* 6 *Vroom* 384; *Joslin* v. *New Jersey Car Spring Co.,* 7 *Vroom* 141; *State, Baxter, pros.,* v. *Jersey City,* 7 *Vroom* 192.