The opinion of the court was delivered by
Duncan, J.
I refer to the judge’s charge fora statement of the facts.
Eight reasons have been assigned by the plaintiff, why a new trial should be granted: on the argument, it appears to me, they have been reduced to three.
1. That the commissioners of Allegheny county had no authority to buy lands; the conveyance to them was, therefore, invalid, and they could transfer no right to Grahamand, if so, then it would be a controversy between John and William Vankirk, in which John having shown an equitable title, would be entitled to recover, unless it appeared in evidence that he had made a valid sale to William, and parted with his title; and if it was by parol, then it would be incumbent to show the precise agreement, what had been paid, and what remained due on it, if it did not appear all had been paid, and that this burden lay on the defendant.
2. Generally, to the charge of the court, with respect to the statute of frauds and perjuries.
3. The admission of evidence of the assessments of John and William’s property, in Elizabeth township.
The first raises a question of nice discussion, and merits attention and consideration. It never yet has been decided, that the commissioners of a county, are a corporation. In Snow v. The Commissioners of Washington County, this is made a query, 1 Serg. & Rawle, 505, and in Lyon v. Adams and others, Commissioners of Cumberland County, 4 Serg. & Rawle, 443, the court avoid giving any opinion, whether commissioners constitute a corporation, liable to be sued; but if they should, the suit must be against the commissioners, without naming them individually, and the judgment would be entered in like, manner.
The legislature have given to them-a very important incident of a corporation, a common seal; and, it is certain, they have sustained an action in the name of-commissioners. The Commissioners of Philadelphia County v. Snyder, 2 Yeates, 95. Commissioners of Berks County v. Ross, 3 Binn. 528. If they can support an action in their public name of office, if the court will acknowledge such a body, capable of maintaining an action, what good reason can be given for not charging them in an action? If they are quasi a corporation to sue, they are quasi a corporation to be sued, it *290 would be against all principle, to say, that in a contract with them as commissioners for building a bridge, or any matter within the scope of their general authority, they could maintain an action on the instrument, and yet the person contracted with, could have no action on the same instrument. Actions of assumpsit have been maintained by the overseers of the poor of one township against the overseers of the poor of another. North Whitehall Overseers v. South Whitehall Overseers, 5 Serg. & Rawle, 126. To give them an action, a judgment and execution, without the means of reaping the fruits of it, would not seem to consist with the wisdom of the law; for, on execution levied, if the land would not condemn, could not the commissioners take it in extent, and lease it. That such corporations, as commissioners, empowered to issue execution, to levy and to sell, can, to secure the debt, purchase, would seem to be consistent with their general power; not that they could buy and hold lands foreign to the nature of their institution; but that they should be enabled to buy in to secure the debt; for otherwise by combination not to bid, the execution might be stopped. By law, in certain cases, they are enabled to buy land for the use of the county, as in sales for unseated lands, where the lands are not bid up by others to the amount of taxes.
The commissioners of a county are coeval with the settlement of the country — are the public agents of the county, with respect to all the money concerns; and must necessarily possess an authority without any express grant from the legislature, commensurate with their public trusts and duties. Chief Justice Spencer, in The Overseers of Pittstown v. Overseers of Plattshurg, 18 Johns. 418, says, that in 8 Johns. 424, the court recognized the authority of the supervisors of a county, an office,somewhat resembling county commissioners, before the act authorizing them to take grants of lands for county purposes, to take such grants for county purposes; and it was there said, that there are many instances of collective bodies of men coming under one general description, endowed with a corporate capacity in some particulars expressed, but who have in no other respect the capacities incident to a corporation.
The commissioners have no power to take lands for any other purpose than for the use of the county they represent; and I think, cannot take lands, except in the case of lands bought in by them to secure the county debts, on process from the courts, or their own process authorized by law, or mortgages given to secure the county debts. Thus far, they have the necessary authority. It is an authority necessary to the discharge of their public trusts and duties; and' which I believe, has been pretty generally exercised. No possiblé evil can result from it, and the public interest requires in some instances its exercise. I am, therefore, of opinion *291 that the sale to the commissioners was a good one, and the conveyance vested the title in them for the use of the county, and they had a right to transfer it.
The sale was in the nature of a judicial sale on execution, in which the commissioners were purchasers. It was a sale of the whole tract, where there had been a notorious and exclusive possession and enjoyment by William of the whole for years; John having removed to another place, and having on all occasions declared that he had sold his share to William. It is not a question between John and 'William, a pure question under the statute of frauds and perjuries, on a parol sale, in which it would be incumbent on William to pi’ove the agreement, the possession delivered on that agreement and its explicit terms; but a.purchase at public sale, where the purchaser could not prove what the agreement was, or its terms, or that all was paid, or if any due, what it was. The uniform declaration of John from 1815 down to the time of the levy, was that he sold to William. The sale was accompanied with the possession; the possession necessarily in pursuance of .the sale. Questions of evidence are always to be understood with relation to the subject matter, and the parties; they are accommodated to the exigencies of the ease. Their foundation is natural justice, general convenience and common sense. The burden of proof generally lies on the party who makes the allegation, because it is supposed to be with his knowledge; it forms a part of his title, as if the dispute here was between John and William. But the defendant stands in a different situation: he is a purchaser, a stranger no wise concerned in the particular agreement of the brothers; he knows that William has been long in the exclusive possession, he knows that John had left it, left it with a declaration that he had sold his share to William. Now, the words sale of my share, signify an absolute sale with payment; or, if it is ambiguous, John should explain it — should, show what the sale was: the purchaser at public sale has a right to this explanation. Is it a secret between John and William — for there is no evidence what it was — how could the purchaser show what it vvas? — what clue had he to unravel it? At no time, in no conversation, did John speaking of this sale, allege that there was any thing due on it. To east the burden of proof on the purchaser, would-be imposing on him what he never could do, what is not within his power or knowledge. To leave it on John, is leaving it on the man.who ought to bear it. If there is any thing due on it, he can show what it is. It was, therefore, fairly left to the jury to presume, that, as John, who could show if any thing was due, what it was, Reclined to do it, all was paid. The whole conduct of John, and the nature of the transaction, is persuasive evidence, that having sold his share, having left the sole possession to his brother, making no demand for years, offering to become security for .his brother; declaring when the report was made against him, by arbitrators in the case of Mat *292 thews, that he could not collect it; he had no more property than the law allowed; his declaration, “That William and he had bought together, but if they will give William time, the commissioners shall never be troubled with this article,” show that he had no claim against William, at least was prima facie evidence sufficient to call on him to rebut it. The judge, therefore, most properly said, that if John Vanhirh now alleges, after what he has said and done since 1S16, that the purchase money is yet due, he ought to show the amount.
As to the admission of the assessments oiJohn and William’s property, this was a spark of evidence, at least, to strengthen the.other circumstances, to show that this was all William’s property. Where John had property in the township, it was assessed in his own name, while this was assessed in the name of William.
The assessment in William’s name could not divest John of his right. It was a circumstance unimportant, standing alone. Yet, connected with the declarations and conduct of John for many years, it was of some consideration, as showing the notorious and acknowledged possession of the brothers, and John can have no reason to complain, if he by bis own declarations and conduct, has put his title in mystery, is called upon merely to explain that which is so much within his power to clear up — to show the time of the sale to his brother, and what shall remain due to him, which would be an equitable lien on the land, and which he could recover through the medium of an ejectment.
Appeal is therefore dismissed, and judgment affirmed.