West, J.
This motion is founded on exceptions to the ruling of the court below. It assumes that the alleged transfer of the certificate in controversy vested no right to recover thereon against the defenses set up, because :
1. It was unsupported by a consideration of value.
2. It was without indorsement in the lifetime of the assignor; and the subsequent indorsemont by his administrators was fraudulent and void as against creditors of his estate.
3. The deposit of the certificate in the treasury of the county was not authorized by the warrant of the county auditor.
4. The commissioners exceeded their powers in assuming to accept it.
*581 5. Its acceptance by the commissioners, with knowledge of the embezzlement on account of which it was transferred, was so lar an acquiescence in the crime as to place the county in pan delicto, thereby vitiating the transfer, and avoiding recovery.
I. Horace Putnam, by his embezzlement of the funds belonging to Madison county, incurred an indebtedness to it in an amount equal to the sum embezzled, recoverable by action against him in his individual character, as upon an implied promise, or upon his official bond, as for a breach thereof. S. & S. Stat. 920; Chowne v. Baylis, 81 Beav. 351. This indebtedness was a sufficient consideration of value to support the assignment of any commercial or other form of security in payment or satisfaction thereof, either by him on his implied promise, or by him or his official sureties, on account of the breach of his bond. His liability in either form constituted a sufficient consideration for the transfer of the certificate in question, and it is a matter of indifference to which it be referred.
II. Indorsement of the certificate by Horace Putnam was not essential to vest in Madison county the light to recover thereon. That its transfer by delivery, without indorsement, was valid and effectual to pass the property therein, if so intended, is sustained alike by principal and authority. 2 Story’s Eq. § 1047; Grover's Adm'r v. Grover, 24 Pick. 261 ; Newby v. Hill, 2 Metc. (Ky.) 530 ; Rollison v. Hope, 18 Texas, 446 ; Runyan v. Merserau, 11 Johns. 534 ; Harriman v. Hill, 14 Maine, 127 ; Porter v. Dunlap, 17 Ohio St. 591 ; Bates v. Dandy, 2 Atk. 206 ; Heath v. Hall, 4 Taunt. 327.
The property in the certificate having passed, by delivery, in the lifetime of Horace Putnam, its subsequent indorsement by his administrators could only have the effect to vest in the county the naked legal title to the instrument, the beneficial interest in which had already vested by his act. The legal title being a ban'en possession in the hands of the administrators, and to which the county was equita *582 bly entitled, its investiture therewith could in no manner operate as a fraud upon his estate.
III. The warrant of the county auditor required by statute (S. & C. 1605, § viii) is not an assential condition precedent to the vesting of title in the county in any case. ■ In devising a system of checks on the treasurer, the legislature deemed the auditor’s warrant an efficient instrumentality for that purpose, by the registry of which, in the books of his office, the aggregate liability of the treasurer might be shown. But it is only proper to be employed in certifying into the treasury funds by which this aggregate is to be augmented, not those for the reimbursement of deficiencies in the aggregate, with which the treasurer already stands charged.
It was competent for Horace Putnam to have restored in money to the vaults of the treasury the five thousand dollars embezzled. Can it be seriously insisted that, without the previous warrant of the auditor, the title to the money so refunded would not have vested in the county ? We cannot understand why it should not. It could not have been necessary, or even proper, for any other purpose, for its registration in the books of the auditor, which it would have been his duty to make, would have shown the treasurer liable for the amount thereof in excess of the correct balance against him. But, without enlarging, it is sufficient to affirm that the auditor’s warrant is an element in the statutory system of book-keeping devised for the protection of the funds belonging to the county, not*a muniment or condition of title in the county.
If, then, the commissioners had power to and did accept the transfer of said certificate in reimbursement of the deficiency in the treasury, the auditor’s warrant was not necessary to vest the title thereto in the county, nor proper to charge the treasurer, he standing already charged with the amount it represented and was intended to replace.
IV. Did the commissioners exceed their powers in assuming to accept the transfer of the certificate in satisfaction and discharge of the treasurer’s liability on account of his *583 embezzlement ? In our opinion they did not. It may be1 laid down as a general rule, that the board of county commissioners is clothed with authority to do whatever the corporate or political entity, the county, might, if capable ot rational action, except in respect to matters the cognizance of which is exclusively vested in some other officer or person. Only what the county might not do, it may not, except as aforesaid. It is, in an enlarged sense, the representative and guardian of the county, having the management and control of its financial interests. The State v. Piatt et al. 15 Ohio, 15, 28 ; Carder v. The Com’rs &c. 16 Ohio St. 353, 369 ; Vankirk v. Clark et al. 16 Serg. & Rawle, 286, 290 ; 2 Wallace (U. S.) 501.
It cannot be contended that the county, if capable to act, might not, in any lawful way, adjust and accept satisfaction of a liability justly and legally due to it. Such was the liability of Horace Putnam incurred by his embezzlement. To satisfy that indebtedness the county might have invoked judicial process, or, in its discretion, have accepted, by amicable arrangement, anything of value in which commer cial payment is accustomed to be made. Certificates of deposit on banking houses of reputed solvency, are the lawful and frequent instrumentalities of such payment. The county, therefore, might well have accepted a transfer of such certificate in liquidation of Putnam’s liability, without infringing any statutory inhibition or contravening the public policy of the State.
The commissioners, as representatives of the county, through whom alone it could act, had plenary power to do the same. By law they constituted the auditing board to which the treasurer was bound, semi-annually, to render his account. It was their province to ascertain, pass upon and settle his liability. The authority to settle, without the power to accept lawful payment in settlement, involves an incongruity. Horace Putnam having failed to make restitution in money, it was competent for him to effect it by the transfer of a certificate of deposit on the banking house of the plaintiffs in error ; and the acceptance thereof by the *584 commissioners, without the warrant of the auditor, which it was within the scope of their powers to do, vested in the county the right to recover thereon, unless the transaction placed the county pari delicto, or made it particeps criminis in the embezzlement.
Y. Was the transaction between the commissioners and treasurer, at their semi-annual settlement in March, 1869, so tainted with illegality as to avoid the transfer of said certificate ? Counsel for the plaintiffs in error have urged this proposition with such earnestness that we have felt it our duty to bestow upon it the most careful consideration.
That a contract, in violation of law, or against public policy, or in furtherance of an object not within the power of the body assuming to exercise it, will not be judicially aided, is too.well settled for discussion. But, in our opinion, the principle has no application to the facts of the present case. The collection'of Putnam’s indebtedness to the county was not an object excluded by law from the power of the commissioners, as was the railroad transaction which constituted the consideration of the contract in The Commissioners of Delaware county v. Andrews, 18 Ohio St. 49. It was not prohibited by any law, but, on the contrary, was enjoined upon the commissioners as an official duty. The transfer of the certificate was not in consideration of compounding the felony, but to make restitution of its fruits, to do which an obligation both legal and moral rested on the assignor.
How the doctrine of in pari delicto can be asserted of the commissioners, under the facts of this case, we are unable to understand'. Putnam’s liability to the county was incurred without their knowledge. They neither created nor caused it. His embezzlement was not by their procurement or connivance. But if it had been otherwise, his liability to the county would not have been thereby affected, or its justice tainted. The commissioners might have become individually liable with him ; but his obligation to the county would have been uone the less, because they had assisted him to plunder its treasury.
*585 But it is insisted, that the acceptance of the certificate by the commissioners, with knowledge of the embezzlement, on account of which it was transferred, was so far an assent to, and acquiescence in the crime, as to place the county in pari delido, thereby vitiating the transfer and avoiding recovery. To hold this would, in our opinion, establish a most remarkable doctrine. By it the commissioners would, in every case of criminal defalcation in the treasury, be precluded from securing restitution; for the acceptance of security to repair a defalcation, without having a knowledge of the existence and criminal origin of the defalcation itself, is a thing the possibility of which we cannot comprehend. The law enjoins upon them the duty of securing reparation whenever the existence of an occasion therefor comes to their knowledge. They cannot perform the duty without such knowledge. But, by this doctrine, the possession of knowledge essential to the discharge of their duty, instantly paralyzed their power to effectually discharge it, and makes them particeps criminis if they assume to do so. We are unwilling that crime shall have such immunity as the affirmance of this doctrine would furnish it.
Our attention has been especially directed to Wheeler v. Russell, 17 Mass. 257. That was the case of contract in plain coutrovention of penal and express statute. Its analogy to this case, either in principle or circumstances, is not perceptible.
We can discover no error in the rulings of the court below, and the motion for leave must be overruled.
Welch, C. J., and White, Day and McIlvaine, JJ.t concurred.